OPINION
{¶ 1} Appellant, Right Now Mini Market, Inc., appeals from a judgment of the Franklin County Court of Common Pleas, affirming the order of appellee, Ohio Liquor Control Commission ("commission"), which reversed a class C-1-2 liquor permit renewal by the Ohio Department of Commerce, Division of Liquor Control ("division").
 {¶ 2} Right Now Mini Market is a convenience store located at 744 Lexington Avenue in Dayton, Ohio. Its owner, Mary Davidson, works alone, selling alcoholic and non-alcoholic beverages, various grocery items, and cigarettes. At the hearing before the commission, Davidson testified that the business grosses between $300 and $500 per day during its hours of operation, which are from 6 p.m. to 1 a.m. due to Davidson's need to be home during the day caring for her sick mother.
 {¶ 3} The market is located in a poorer area of Dayton, and the street corner tends to attract loiterers and drug dealers. When Davidson renewed her liquor permit, the city of Dayton appealed the renewal to the commission on the grounds that the store was attracting criminal activity and contributing to the deterioration of the neighborhood. At the hearing, Dayton police officer Michelle Moser testified that there were frequent police calls to that address, although none of the calls involved activity inside the store or had to do with underage liquor sales. The calls included reports of, and arrests for, drug activity, menacing, possession of criminal tools, rock throwing, domestic violence, and a nearby shooting resulting in one injury and one death. Officer Moser stated that, during 2003, there were 415 crime reports taken in the five- or six-block area in which the market is located. In her opinion, that number of reports rendered the neighborhood a high-crime area. On cross-examination, Officer Moser admitted that many of the incidents and arrests did not occur on the permit holder premises, and that the shooting may have occurred in another location with a victim fleeing to the Right Now Mini Market parking lot.
 {¶ 4} Greg Alexander, a community service advisor for the city of Dayton, testified that he assists a local citizens group, the Northwest Priority Board, in attempting to improve neighborhood conditions. Alexander testified that he has personally observed undesirable activity on and around the market premises, including people loitering in and around cars in the parking lot, drinking, trashy conditions (including an accumulation of empty beer bottles and cans), loud music, people standing in the street blocking traffic, and gambling. He specifically recalled seeing young people drinking out of open containers on the premises, and doing so while on and around cars parked in the store's lot. (Tr. 26.) In Mr. Alexander's opinion, the individuals engaging in this activity consumed alcohol until they could get drugs, or to support their drug-induced high. (Tr. 35.)
 {¶ 5} Allyson McCalister, who lives in the neighborhood, testified that she used to take her children to the market to buy candy, but that now she does not even drive past if she can avoid it. However, she recounted some of her recent observations:
* * * Since I heard about this hearing, I made a point of going by a couple, few times, just to see if it was still the way it had been, with people coming out and hollering, "Do you want to — I got what you want," and carrying on. And some of the roughnecks that are around there. And it's that way still. More so now: They're bolder.
* * *
* * * Went by one time and cars were in the parking area, and they were flipping around, there would be some parked in the middle, cars around the parking lot, and flying out of the driveway on Lexington, like to see who could bounce the highest; it was almost like a competition.
Young men by the scores, I'm talking like 20 or 30, just milling about, some hollering out into the street. Some, I actually witnessed a fight in the parking lot about a year ago. And it's just broken glass in the streets and on the corner. It's just ugly. * * *
* * * When you stop or pull up to the stop light, once it gets dark, they come out in flocks. And they'll come out to the car. And it doesn't necessarily take you looking at them, they come out — especially if it's a woman driving, they just feel bold enough to come right out there, "Hey, baby, I got what you want. What you looking for?" And, you know, hand in the pocket, "I got what you want." * * *
* * *
It's pretty common knowledge they're selling crack or whatever it is. Maybe weed, I don't know, but they're selling drugs.
(Tr. 55-58.) According to Ms. McCalister, the atmosphere in the area surrounding the store is "violent," and the motive for being there is "to go get alcohol and get drunk." (Tr. 61.)
 {¶ 6} Another neighbor, Leroy Rodgers, testified that he frequently passes the market and has observed "a lot of young folk that I believe are selling drugs. They approach me, asking if I want to buy or do I need a fix or need a hit." (Tr. 69.) Mr. Rodgers testified that the conditions around the store would be better if there were no liquor permit for the premises. (Tr. 74.) In his opinion, "where you find the sale of malt beers and that sort of thing, it seems to draw the kind of crowd that becomes the nuisance that we have on that corner." Id.
 {¶ 7} While admitting the problems around her store, Davidson testified that she does not sell alcohol to underage drinkers, and that much of the trash derives from fast food places and not from her store. While acknowledging the drug traffic near her store, she also pointed out that she does control her parking lot, and that some of the problem is due to a vacant house next door. She stated that the bus stop and public telephone outside her store are not under her control, and that, in fact, she objected to the installation of the phone because she knew it would cause the type of loitering she now sees near her store. She testified: "What we have is [a] community problem. And I don't know how to be responsible for everybody, for a community." (Tr. 95.)
 {¶ 8} Addressing this evidence, the trial court upheld the commission's decision to reverse the permit renewal, stating:
While Appellant presented evidence at the hearing which included testimony that conditions around the store have recently improved, the Commission, as the finder of fact, was entitled to believe the testimony in opposition to renewal of the permit and testimony that the problems generally have not improved, but rather have worsened in recent years. This Court further finds significant that despite Ms. Davidson's admitted awareness of problems with drug dealers both in the area surrounding the permit premises, as well [as] the parking lot and rear of the premises itself, she has not taken any steps to hire a security guard or even a second employee to more closely monitor these problematic areas.
Even if the Court might have reached a different conclusion regarding Appellant's application, the Court is not to substitute its judgment for that of the Commission. Given the specific evidence supporting the City of Dayton's objection, the Commission was within its discretion in denying Appellant's application for permit renewal.
(Decision Entry, 9.)
 {¶ 9} Appellant now assigns the following as error:
I. The City of Dayton did not produce the requisite evidence that a renewal of Right Now's liquor permit would substantially interfere with the public decency, sobriety, peace or good order of the surrounding community. Therefore, the Court must overturn the lower court's decision to uphold the Commission's erroneous denial of Right Now's renewal.
II. The Ohio Supreme Court's outdated holding in Henry's Café [v. Bd.of Liquor Control (1959), 170 Ohio St. 233] should not be controlling because Ms. Davidson is not responsible for the actions that led to the non-renewal.
These assignments of error are related and will be addressed together.
 {¶ 10} In an administrative appeal, pursuant to R.C. 119.12, the trial court reviews an agency's order to determine whether the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In doing so, the court must give due deference to the administrative resolution of evidentiary conflicts. Univ. ofCincinnati v. Conrad (1980), 63 Ohio St.2d 108. On appeal to this court, the standard of review is more limited. Our duty is to determine whether the common pleas court abused its discretion in rendering a decision that is both without a reasonable basis and is clearly wrong. Hartzog v. OhioState Univ. (1985), 27 Ohio App.3d 214; Angelkovski v. Buckeye PotatoChips Co. (1983), 11 Ohio App.3d 159. This standard of review is limited to issues such as the weight of the evidence and credibility of the witnesses as to which the court of common pleas has some limited discretion to exercise. On questions of law, this court's review is plenary. Univ. Hosp., Univ. of Cincinnati College of Medicine v. StateEmp. Relations Bd. (1992), 63 Ohio St.3d 339.
 {¶ 11} The commission based its reversal of the permit renewal upon R.C. 4303.292(A)(2)(c), which provides:
(A) The division of liquor control may refuse to [renew any retail permit if it finds]:
(2) That the place for which the permit is sought:
(c) Is so located with respect to the neighborhood that substantial interference with public decency, sobriety, peace, or good order would result from the [renewal] of the permit and operation under it by the applicant[.]
 {¶ 12} The core issue in this case is whether there was evidence of some connection between neighborhood conditions and the sale of liquor at Right Now Mini Market, thus justifying the non-renewal of the permit. In numerous cases, this court has determined that a showing of good cause for non-renewal of a liquor permit can rest upon evidence of a deleterious effect the sale of liquor has upon the surrounding environment, even where the permit premises itself has no record of permit violations. See Marciano v. Ohio Liquor Control Comm., Franklin App. No. 02AP-943, 2003-Ohio-2023, and cases cited therein; 3M, Inc. v.Ohio Liquor Control Comm. (Jan. 25, 2001), Franklin App. No. 00AP-529;Nijmeh, Inc. v. Ohio Liquor Control Comm., Franklin App. No. 03AP-78, 2003-Ohio-4761; Ossie, Inc. v. Ohio Liquor Control Comm., Franklin App. No. 02AP-1209, 2003-Ohio-2729; Elbireh Empire, Inc. v. Ohio LiquorControl Comm., Franklin App. No. 02AP-1124, 2003-Ohio-2484.
 {¶ 13} Here, the commission had before it the testimony of Mr. Alexander, Ms. McCalister, and Mr. Rodgers. As described above, each of these witnesses gave testimony that linked the sale of alcohol to the undesirable activity in the immediate area. Given this connection between the neighborhood conditions and the sale of alcohol, the trial court was within its discretion in concluding the commission had before it reliable, probative, and substantial evidence that the location of the Right Now Mini Market substantially interfered with public decency, sobriety, peace or good order.
 {¶ 14} We recognize that the result in this case forces the permit holder to shoulder a substantial burden for community problems that she does not willingly support and may be powerless to solve, and we are reluctant to affirm a decision that, quite probably, will eliminate Ms. Davidson's livelihood. Nevertheless, we are obligated to follow the law, and, given the evidence adduced at the hearing before the commission, the weight of precedent requires us to affirm the decision of the trial court.
 {¶ 15} Based upon these considerations, we overrule appellant's two assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Petree and McGrath, JJ., concur.